UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| COLBERT & WINSTEAD, PC 401(K) PLAN; and RICHARD L. COLBERT and KURTIS J. WINSTEAD, as Trustees of Colbert & Winstead, PC 401(K) Plan, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 3:07-1117 |
| AIG FINANCIAL ADVISORS, INC. and SPELMAN & CO., INC. | ) ) ) ) | Judge Echols |
| Defendants. | ) ) | |

## MEMORANDUM

Pending before the Court is a Motion to Dismiss (Docket Entry No. 15) filed by Defendants AIG Financial Advisors, Inc. ("AIGFA") and Spelman & Co., Inc. ("Spelman"). Plaintiffs have responded in opposition to the motion (Docket Entry No. 24), to which Defendants have replied (Docket Entry No. 29).

## I. FACTUAL BACKGROUND

The allegations in the Complaint are as follows. Colbert & Winstead PC 401(k) Plan (the "plan") is a retirement benefit plan established for the benefit of the employees of the law firm of Colbert & Winstead, P.C. Richard L. Colbert and Kurtis J. WInstead are Trustees of the plan. Defendant AIGFA, a Delaware corporation with its principal place of business in Arizona, is a securities broker dealer and a registered investment advisor. Defendant Spelman, also a Delaware

1

corporation with its principal place of business in Arizona, is a securities broker dealer and a registered investment advisor. Spelman became part of AIGFA sometime in 2005.[1]

Plaintiffs claim that Barry Stokes ("Stokes") was affiliated with Spelman and/or AIGFA as a registered securities representative and an investment advisor representative. Plaintiffs also claim Stokes was licensed as an insurance agent in the State of Tennessee through AIG Life Insurance Co., a corporate affiliate of AIGFA.

In 2001, Stokes and his company, 1Point Solutions, LLC,[2] was engaged by Colbert & Winstead as Trustees to provide various services for the plan, including identifying securities in which to invest the plan's assets, facilitating investments in those securities, and providing administrative services with respect to those investments. At Stokes' instructions, the plan transferred retirement benefit plan assets to an account with Spelman in July 2001, with Stokes listed as the investment representative for the account. Colbert & Winstead maintained an account with Defendants until November 2005.

In November 2005, Stokes advised Plaintiffs that it would be in their best interest to move their retirement plan assets to another firm. Pursuant to Stokes' instructions, Richard Colbert ("Colbert"), a trustee of the trust created to hold assets of the plan, signed a letter prepared by Stokes directing that the funds be liquidated and transferred to another firm. Stokes forwarded the letter to Defendant AIGFA, along with instructions to liquidate and transfer Plaintiffs' funds to another firm.

---

[1]The Complaint alleges "Spelman became part of AIGFA" and that AIGFA is the successor corporation of Spelman. There is no indication as to how this occurred.

[2]The corporate structure and ownership of 1Point Solutions is not made clear in the Complaint. The Complaint indicates only that 1Point Solutions was Stokes' "company," that Stokes "was doing business through 1Point Solutions" and that "1Point Solutions was Mr. Stokes' primary business."

2

In the spring of 2006, Plaintiffs decided to terminate their relationship with Stokes and engage the services of a new third party administrator and investment advisor. In June of 2006, Colbert instructed Stokes to liquidate Plaintiffs' assets and transfer them to the new firm Plaintiffs had engaged.

Stokes did not comply with these instructions because, unbeknown to Plaintiffs, Stokes had already stolen Plaintiffs' assets, after having previously transferred assets to a 1Point Solutions bank account under his control. Plaintiffs claim Stokes stole the funds and used them for his own purposes.

Plaintiffs assert that their assets have vanished. Both Stokes and 1Point Solutions are in bankruptcy. Stokes has been indicted and is in jail.

Plaintiffs claim that in November of 2005, when Stokes recommended that Plaintiffs move assets to a new firm, Stokes did not intend to invest Plaintiffs' assets properly. Instead, Stokes intended to misappropriate Plaintiffs' funds and/or use them in an unauthorized and unlawful manner.

Plaintiffs claim that from 2001 to 2006, Defendants were aware of the following:

• Stokes was doing business through 1Point Solutions and that was his primary business;

• 1Point Solutions offered services to 401(k) retirement plans and individual retirement plans;

• 1Point Solutions offered services to health care flexible savings accounts and/or other health insurance-related accounts;

• 401(k) plan assets and retirement plan assets are typically invested in securities;

• assets placed in certain types of health care plans offered by 1Point Solutions may be invested in securities;

3

- the services that 1Point Solutions offered to clients included management services for 401(k) plans;

- 1Point Solutions offered to assist and/or assisted plan sponsors with their investment portfolios; and

- 1Point Solutions made mutual fund investments available to its clients.

(Complaint ¶¶ 18-26).

Plaintiffs assert that under National Association of Securities Dealers ("NASD") rules, Defendants had a duty either to supervise any securities-related activity in which they knew Stokes was engaged, or to prevent him from engaging in such an activity.[3] Plaintiffs claim Defendants failed to comply with these regulatory obligations.

Based upon these allegations, Plaintiffs filed a four count Complaint. In Count One, Plaintiffs assert a cause of action under the Tennessee Securities Act, T.C.A. § 48-2-121. In Count Two, Plaintiffs claim a violation of Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. 78j, and Rule 10b-5(b) of the SEC Regulations promulgated under that Act. In Count Three, Plaintiffs assert a common law claim for negligent and reckless supervision. Finally, in Count Four, Plaintiffs assert a claim for common law fraud.

In their Motion to Dismiss, Defendants assert that certain critical allegations are missing from Plaintiffs' Complaint. In this regard, Defendants point out the following:

---

[3]Plaintiffs claim that Defendants "had a greater than usual obligation to supervise the activities of Mr. Stokes" because they knew or should have known that Stokes and a company he owned filed bankruptcy in 1984, Stokes had been affiliated with five different broker dealers before joining Spelman as a securities representative and investment advsior, Stokes was terminated by The Advisor Group in December 2001 because he failed to cooperate with an investigation of his receipt of a client's funds, and Stokes received a formal caution from NASD in March 2001 because he had failed to disclose certain outside business activities to The Advisor Group as required by NASD rules. (Complaint ¶ 28).

4

  1. Plaintiffs do not allege Defendants had any involvement in the operation or actions of Stokes' 1Point Solutions company;

  2. Plaintiffs do not allege any reliance on (or even knowledge of) Stokes' affiliation with Defendants when they decided to engage Stokes and his 1Point Solutions company;

  3. Plaintiffs do not allege that 1Point Solutions was connected in any respect with Defendants:

   a. when Plaintiffs decided to engage Stokes and 1Point Solutions;

   b. during the course of any of Plaintiffs' dealings with 1Point Solutions;

   c. when Stokes recommended Plaintiffs to transfer plan assets away from Spelman; or

   d. at any other time;

  4. Plaintiffs do not allege Stokes was acting within the course and scope of his affiliation with Defendants when he allegedly transferred the plan assets to a bank account that he controlled and subsequently used the assets for his own purposes; and

  5. Plaintiffs do not allege the time, place or content of Stokes' alleged fraud.

(Docket Entry No. 16 at 5-6). Defendants claim that such omissions are fatal to Plaintiffs' claims.

## II. **STANDARD OF REVIEW**

In considering a Motion to Dismiss, the Court is to construe the Complaint in the light most favorable to the Plaintiffs, accept the Complaint's allegations as true, and draw all reasonable inferences in favor of the Plaintiffs. <u>DirecTv, Inc. v. Treesh</u>, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). Nevertheless, in order to survive a Motion to Dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the factual allegations in the Complaint must "raise a right to relief above the speculative level." <u>Bell Atl. Corp. v. Twombly</u>, 127 S.Ct. 1955, 1965 (2007). That is, a Complaint must contain facts sufficient to "state a claim to relief that is plausible

on its face." Id. at 1974. In making the evaluation, a court generally is limited to the Complaint and exhibits attached thereto. Amini v. Oberlin College, 259 F.3d 493, 502 (6th Cir. 2001).

### III. APPLICATION OF LAW

Defendants advance assorted arguments in support of their Motion to Dismiss. Defendants claim that Plaintiffs' state law claims are preempted by the Employee Retirement Income Security Act ("ERISA"). Defendants also assert Plaintiffs' Complaint fails to state a clam under Section 10(b) of the federal securities law, under the Tennessee securities law, or under Tennessee common law for breach of agency, fraud or negligent supervision.

### A. ERISA Preemption

Defendants assert Plaintiffs' state law claims are preempted by ERISA. Prior to reaching the preemption argument relating to the common law claims, the Court first turns to preemption as it relates to Plaintiffs' claim under the Tennessee Securities Act.

"ERISA contains an expansive preemption provision, which mandates that ERISA preempts 'any and all state laws insofar as they may now or hereafter relate to any employee benefit plan' governed by ERISA." Thomas v. Miller, 489 F.3d 293, 300 (6th Cir. 2007)(quoting, 29 U.S.C. § 1144(a)). "The preemption is not complete, however, because ERISA saves 'any law of any State which regulates insurance, banking, or securities.'" Benefit Recovery, Inc. v. Donelon, 2008 WL 642972 at *3 (5th Cir. 2008)(quoting, 29 U.S.C. § 1144(b)(2)(A)). This savings clause applies unless it can be said that the insurance, banking, or securities laws do not "substantively regulate a relationship," but "merely provide[] alternative remedies for harms for which ERISA already provides redress." Smith v. Provident Bank, 170 F.3d 609, 615 (6th Cir. 1999).

6

This Court's review of the Tennessee Securities Act leads it to conclude that it substantively regulates the offer, sale, or purchase of securities in Tennessee, as well as the relationship between dealers and their agents, and is not intended to redress harms contemplated by ERISA. Its goal is to "protect investors of this state" by policing "not only 'obvious and commonplace investment schemes,' but also 'the countless and variable schemes devised by those who seek the money of others on the promise of profits.'" King v. Pope, 91 S.W.3d 314, 322 (Tenn. 2002). Thus, the Court finds no overlap with ERISA and accordingly a claim under the Tennessee Securities Act is not preempted.

Turning to the state common law claims in this case, ERISA, as already noted, preempts state law claims as they "relate to" an ERISA plan. Because this language governing federal preemption is somewhat "opaque," courts "have struggled to determine the scope of ERISA's preemption provisions." Kloots v. American Express Tax and Bus. Servs., 233 Fed. Appx. 485, 487 (6th Cir. 2007).

"The Supreme Court has explained that Congress used language that was 'deliberately expansive, and designed to establish pension plan regulation as exclusively a federal concern.'" Thurman v. Pfizer, Inc., 484 F.3d 855, 861 (6th Cir. 2007) (quoting, Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 46 (1987)). Nevertheless, while the words "relate to" are "words of limitation that were purposefully written into the statute," those terms cannot be taken to their "most logical extension" because "'pre-emption would never run its course." Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension, 399 F.3d 692, 697 (6th Cir. 2005)(quoting, N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655 (1995)). Thus, many state law tort and contract claims are preempted, while others which are said to be "'too tenuous, remote, or peripheral'" to

7

relate to an ERISA plan are not preempted. Thurman, 484 F.3d at 861 (quoting, Ingersoll-Rand Co. v. McClendon, 489 U.S. 133, 139 (1990)).

In determining whether a claim is tenuous, remote or peripheral, the Sixth Circuit "focuse[s] on the remedy sought by plaintiff[]." Marks v. Newcourt Credit Group, Inc., 342 F.3d 333, 353 (6th Cir. 2003). Under this approach, where resolution of the claim requires evaluation of the plan and the parties' performance in relation to the plan, the claim is preempted. Thurman, 484 F.3d at 862. On the other hand, where the claim does not require interpreting the parties' responsibilities under the plan, the claim is not preempted. Id. Relatedly, the Sixth Circuit has consistently held that ERISA does not preempt state-law claims brought against non-fiduciary service providers in connection with services rendered to a plan. Kloots, 244 Fed. Appx. at 488 (collecting cases).

In this case, Plaintiffs are not asserting that defendants have acted in violation of an ERISA plan or denied benefits under the terms of an ERISA plan. Nor are they asserting a claim against a plan administrator. Such claims would be at the heart of ERISA activities. Instead Plaintiffs' claims rest upon alleged legal duties that are independent of ERISA, and the fact that this action may relate to assets lost from an ERISA plan does not mean that it is subsumed by ERISA.

The case of Coldesina v. Estate of Stimper, 407 F.3d 1126 (10th Cir. 2005), relied upon by Plaintiffs, illustrates these points. There, an ERISA plan's investment advisor was alleged to have stolen $600,000 of plan assets, prompting the plan to file negligent supervision claims against an investment firm and an insurance company with which the investment advisor was affiliated. As in this case, Defendants argued that because the investment advisor's breach of fiduciary duties gave rise to the loss, the plan was impermissibly attempting to "supplement the remedies" provided by ERISA. In rejecting this argument, the Tenth Circuit observed that the negligent supervision count

8

bore nothing but a fortuitous relationship to the plan and certainly could have been asserted had the investment adviser stole private funds, as opposed to those in an ERISA plan. Id. at 1137. The Tenth Circuit went on to observe:

> "While ERISA does regulate and provide remedies for fiduciary breach, the negligent supervision claim is not based on [the fiduciaries'] behavior. Rather, it is a direct claim based on the defendants' common law duty to adequately supervise their agent, which arises independently from ERISA or the plan terms."

Id. at 1138.

There is little difference between the allegations made in this case and those in Coldesina, and the same rationale applies to Plaintiffs' claims for negligent supervision and fraud. Stripped to its essence, Plaintiffs' allegation is that Stokes stole money (albeit from an ERISA plan) while acting as a registered securities representative and investment advisor representative or agent under the control or supervision of the Defendants. Such allegations may be difficult to prove in the long run, but they do not implicate the plan itself or Congress' concern in enacting ERISA which "was to provide a uniform regulatory regime over employee benefit plans," and avoid supplanting or duplicating ERISA's civil enforcement mechanism. Aetna Health v. Davila, 542 U.S. 200, 209 (2004).

Further support for this Court's conclusion can be found in Judge Haynes' decision in As You Sow v. AIG Financial Advisors, Inc., Case No. 3:06-1171 (hereinafter cited as "As You Sow, Memo. at ____").[4] In that case, trustees and sponsors of a 401(k) plan sued the same Defendants in this case in relation to alleged theft by Stokes from an ERISA plan. Plaintiffs brought claims

---

[4]The Court recognizes Defendants have filed a Motion for Clarification in As You Sow. However, that request merely asks Judge Haynes to clarify that he was not making factual findings, but was merely construing the alleged facts in a light most favorable to plaintiffs as required by Rule 12(b)(6) of the Federal Rules of Civil Procedure.

9

under the Tennessee Securities Act, as well as common law claims for negligent and grossly negligent supervision and fraud. Defendants moved to dismiss raising many of the same preemption arguments asserted in this case.

In rejecting Defendant's arguments, Judge Haynes observed that while preemption under ERISA is broad, it contains an exemption for claims brought under state securities laws and that, given its extensive regulatory provisions, the Tennessee Securities Act fell within that exemption. (As You Sow, Memo. at 5). Judge Haynes also found that the common law negligence and fraud claims were not preempted because Defendants were not fiduciaries and the Sixth Circuit had previously allowed an ERISA plan to sue a non-fiduciary for state law claims for negligence and conversion. Id. at 5-6, citing, Smith, 170 F.3d at 612 & 617. Likewise in this case, the Court concludes that Defendants are not fiduciaries of the plan and Plaintiffs' claims are not preempted by ERISA.

## B. **Failure to State a Claim**

Defendants assert that each of Plaintiffs' claims is subject to dismissal because the Complaint contains insufficient allegations to support recovery or because, even accepting the allegations as true, recovery is barred. In this regard, Defendants argue (1) Plaintiffs' federal and state securities law claims fail because Plaintiffs do not allege Defendants controlled the allegedly fraudulent activities; (2) the respondeat superior claim under state law fails because Plaintiffs do not sufficiently plead an agency relationship; (3) the fraud claims fail because they are not pleaded with particularity; and (4) the negligent and reckless supervision claim fails because Defendants owed no duty to Plaintiffs.

10

**1. Federal and State Securities Law Claims**

Defendants seek dismissal of the state and federal securities law claims on the ground that Plaintiffs cannot show Defendants had sufficient control over the actions of Stokes. That is, their arguments focus on the control person liability provisions found in the federal and state securities law statutes.

The control person liability provisions of both the Securities and Exchange Act of 1934, 15 U.S.C. § 78(t) ("§ 78(t)") and the Tennessee Securities Act are similar. The former provides that "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter . . . shall also be liable with and to the same extent as such controlled person," 15 U.S.C. § 78(t), while the latter provides that "[e]very person who directly or indirectly controls a person liable under this section . . . [is] also liable jointly and severally with and to the same extent as such person." T.C.A. § 48-2-122(g).

Despite the similarity in language between the federal and state provisions, Tennessee state courts have not definitively addressed whether those provisions should be analyzed in the same fashion. Two judges in this district, however, have addressed the issue of control person liability under § 78(t) and the Tennessee Securities Act and reached different conclusions.

In Cannon v. GunnAllen Finan., Inc., 2007 WL 2351313 (M.D. Tenn. 2007), Judge Trauger concluded that control person liability under federal and state law should be analyzed similarly. After noting the similarity in both statutes as they relate to control person liability, Judge Trauger wrote:

> While courts have not yet interpreted Section 48-2-122(g), the control person provision of the TSA, they have analyzed Section 78(t), its arguable federal counterpart. In one case, the Sixth Circuit held that a finding of control person liability required, at a minimum, a demonstration "that the defendant . . . actually

11

> participated in (i.e., exercised control over) the operation of the . . . violator[ ] in general and that the defendant possessed the power to control the specific transaction or activity upon which the primary violation is predicated." See, Sanders Confectionary Prods. v. Heller Fin., Inc., 973 F.2d 474, 486 (6th Cir. 1992) (internal quotation omitted). Chief Judge Campbell of this district accurately translated this holding into a three-part test when he held that, "to state a claim for control person liability, the Plaintiffs must, at a minimum, plead facts to establish three essential elements: (1) a primary securities law violation; (2) power to control the specific transaction or activity upon which the primary violation is predicated; and (3) actual participation (i.e., exercise control) in the operations of the primary violator in general." See, In re Prison Realty Secs. Litig., 117 F.Supp.2d 681, 692 (M.D. Tenn. 2000).
>
> Although the court recognizes that "state and federal regulations serve different purposes," because "states enacted securities regulation to protect investors," while "[f]ederal securities regulations . . . were enacted to serve the broader purpose of protecting the integrity of the increasingly nationalized market," it also notes the Tennessee General Assembly's directive that the TSA should be interpreted to, among other things, "coordinate the interpretation and administration of this Act with related federal . . . regulation." See King [v. Pope, 91 S.W.3d 314, 319 & 322 (Tenn. 2002)]. To interpret differently language that is nearly identical could lead to marked confusion, particularly among courts tasked with applying both TSA Section 48-2-122(g) and SEA Section 78(t). . . . Such would not comport with the General Assembly's directive. Additionally, lending the control person portion of Section 48-2-122(g) the same meaning as the control person provision of Section 78(t) does not appear to undermine the TSA's ability to protect investors. As such, this court will interpret the TSA's control person provision in the same manner as the Sixth Circuit would require it to interpret Section 78(t) of the Securities and Exchange Act ("SEA"), i.e., it will analyze whether plaintiffs seeking to state a claim under Section 48-2-122(g) have alleged (1) a primary securities law violation; (2) power to control the specific transaction or activity upon which the primary violation is predicated; and (3) actual participation (i.e., exercise control) in the operations of the primary violator in general. See, In re Prison Realty Secs. Litig., 117 F.Supp.2d at 692.

Id. at *4.

Subsequently, Judge Haynes addressed the issue in As You Sow. In that case, Judge Haynes acknowledged Judge Trauger's conclusion that the control person provision under the Tennessee Securities Act should be analyzed similarly to the provision in § 78(t), but "respectfully disagree[d]." As You Sow, Memo. at 15. Judge Haynes was of the opinion that, given the Tennessee Supreme

12

Court's remedial interpretation of the Tennessee Securities Act in King,[5] the control person provision of the Tennessee Securities Act "includes a securities dealer that 'indirectly' controls its registered agent." Id.

The Court finds that regardless of whether the control person provision of the Tennessee Securities Act is read to be comparable to § 78(t) or merely requires indirect control over a registered agent, Plaintiffs have pleaded sufficient allegations to withstand a motion to dismiss the securities act claims.

When the Complaint is read in a light favorable to the Plaintiffs, Plaintiffs are alleging that Defendants were generally involved in Stokes' business and that they had the power to control the transactions in which the securities fraud occurred. Specifically, the Complaint alleges that during all times material to this case, Stokes was affiliated with Defendants as a securities representative and an investment advisor representative and that Plaintiffs had a brokerage account with Defendants over which Stokes was the investment representative. Further, Plaintiffs have alleged that under NASD rules, Defendants had a duty either to supervise any securities-related activity in which they knew Stokes was engaged or to prevent him from engaging in such an activity. Plaintiffs also allege that Defendants knew that Stokes was offering securities-related services to 401(k) plans, knew that Plaintiffs had opened a securities account for the Colbert & Winstead 401(k) Plan, and that Defendants had the power and the duty to supervise Stokes' dealings with Plaintiffs.

The Court finds such allegations, "raise a right to relief above the speculative level." Bell, 127 S.Ct. at 1965. After all, the inquiry to be undertaken in considering a Motion to Dismiss is "'not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to

---

[5]King was also cited by Judge Trauger. That case dealt with the proper interpretation of an investment contract under the Tennessee Securities Act.

13

support the claims.'" Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002)(citation omitted). The federal and state securities law claims will not be dismissed at this juncture.

**2. Respondeat Superior Claim**

Defendants seek dismissal of Plaintiffs' respondeat superior claim on two grounds. First, Defendants assert that Plaintiffs' allegations are insufficient to establish Stokes acted as Defendants' agent. Second, Defendants assert that Stokes' actions were purely personal and as such were beyond the scope of any agency relationship with Spelman or AIGFA.

Plaintiffs argue that, under the NASD, a broker dealer who becomes aware than an affiliated agent is engaging in private securities transactions is required to either supervise the agent broker or disapprove the transaction. Plaintiffs assert that this supervisory requirement formed an agency relationship because "broker dealers may not enjoy the benefits of their relationship with affiliated agents without discharging their supervisory duties, including the supervision of private securities transactions." (Docket Entry No. 24 at 15). Since they allege Stokes engaged in securities-related activities with Plaintiffs and others and Defendants had a duty to supervise such activity, dismissal of the respondeat superior claims is not warranted.

The law of agency in Tennessee was recently summarized as follows:

> The general rule in Tennessee is that a principal is liable for the negligence or wrongful acts of his agent acting within the actual or apparent scope of his employment in the principal's service. See, e.g., 1 Tenn. Juris., Agency, § 47 (1982); V.L. Nicholson Co. v. Transcon Inv. and Financial Ltd., Inc., 595 S.W.2d 474, 483 (Tenn. 1980); McGee v. County of Wilson, 574 S.W.2d 744, 746-47 (Tenn. Ct. App. 1978). This respondeat superior liability exists where the principal has a right to control the agent. See, Doane Agric. Serv., Inc. v. Coleman, 254 F.2d 40, 43 (6th Cir. 1958), cert. denied, 358 U.S. 818, 79 S.Ct. 29, 3 L.Ed.2d 60 (1958). Our Supreme Court has recognized that "a servant, acting within the general scope of his authority, makes the master responsible, even though he act without instructions, or exceed his instructions." Louisville & N.R. Co. v. Marlin, 135 Tenn. 435, 186 S.W. 595, 596 (1916). This responsibility on the part of the principal exists even where

14

> the injured party is "wholly a stranger" to the principal. Id. The question of whether an agency relationship exists and the scope of the agent's authority are questions of fact. See, Mays v. Brighton Bank, 832 S.W.2d 347 (Tenn. Ct. App.1992); Board of Directors of City of Harriman School Dist. v. Southwestern Petroleum Corp., 757 S.W.2d 669 (Tenn. Ct. App.1988).
> 
> The gravamen of respondeat superior is that the master may be sued even though the master is not personally at fault. See, e.g., Rankhorn v. Sealtest Foods, 63 Tenn. App. 714, 479 S.W.2d 649 (1971).

Willis v. Settle, 162 S.W.3d 169, 182-183 (Tenn. Ct. App., 2004).

Willis makes clear that the existence and scope of an agency relationship are fact driven. Given that, as well as the standards governing motions to dismiss, the Court will not dismiss Plaintiffs' respondeat superior claim.

### 3. Negligent Supervision Claim

Tennessee recognizes the common law tort of negligent supervision, which is different from respondeat superior because it provides a direct basis for liability. Darling v. J.B. Expedited Serv. Inc., 2006 WL 2238913 at *28 (M.D. Tenn. 2006). The precise elements of such a claim have not been defined by Tennessee courts. Estate of Hardin v. Broadmore Senior Serv., LLC, 2007 WL 2112670 (M.D. Tenn. 2007). However, because such claims are grounded in negligence, it is generally held that in order to recover a plaintiff must show duty, breach, injury and causation. See, Darling, 2006 WL 1128913 at *28; Donnell v. Kohler Co., 2005 WL 2071784 at *5 n.1 (W.D. Tenn. 2005).

In this case, Defendants assert dismissal of the negligent supervision claim is warranted because Plaintiffs cannot show breach of a duty owed by Defendants to them. Defendants note that while Plaintiffs assert Defendants had certain duties with respect to Stokes based upon NASD, violations of NASD rules do not provide for a private right of action.

In <u>Biscan v. Brown</u>, 160 S.W.3d 462 (Tenn. 2005), the Tennessee Supreme Court, after noting that duty is a question of law for the court, described the concept of duty in negligence actions as follows:

> In general, all persons have a duty "to use reasonable care to refrain from conduct that will foreseeably cause injury to others." <u>Turner [v. Jordan]</u>, 957 S.W.2d [815,] 818 (<u>citing,</u> <u>Doe v. Linder Constr. Co.</u>, 845 S.W.2d 173, 178 (Tenn.1992)). We determine whether a duty existed in a particular case by evaluating the risk involved. "A risk is unreasonable and gives rise to a duty to act with due care if the foreseeable probability and gravity of harm posed by defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm." <u>McCall v. Wilder</u>, 913 S.W.2d 150, 153 (Tenn.1995).
> 
> The general duty of care does not include an affirmative duty to act for the protection of another, however, "unless the defendant 'stands in some special relationship to either the person who is the source of the danger, or to the person who is foreseeably at risk from the danger.'" <u>Turner</u>, 957 S.W.2d at 818 (<u>citing</u> <u>Bradshaw [v. Daniel]</u>, 854 S.W.2d [865,] 818 [Tenn. 1997]); see also Restatement (Second) of Torts § 315 (1965) (hereinafter "Restatement"). The special relationship doctrine carves out an exception to the general rule that there is no duty to act for the protection of a third party. <u>Bradshaw</u>, 854 S.W.2d at 871; see also Restatement § 315. In other words, the doctrine recognizes that "'certain socially recognized relations exist which constitute the basis for such legal duty.'" <u>Bradshaw</u>, 854 S.W.2d at 871 (quoting Fowler, Harper & Posey M. Kime, The Duty to Control the Conduct of Another, 43 Yale L.J. 886, 887 (1934)).

<u>Id</u>. at 478-79. The Tennessee Supreme Court in <u>Biscan</u> went on to observe that the imposition of a legal duty reflects contemporary policies and requirements. <u>Id</u> at 479.

In determining contemporary policies and the existence of a legal duty, a court may look to governmental and trade regulations to determine the existence and extent of a duty. <u>As You Sow</u>, Memo. at 21-22 (collecting cases). The NASD "is an association of broker-dealers authorized under the Security Exchange Act to develop and enforce rules of professional conduct for its member firms, subject to oversight by the SEC." <u>Gurfel v. SEC</u>, 205 F.3d 400, 401 (D.C. Cir. 2000). Thus, while NASD does not provide for a private cause of action, the relationships defined and governed by the NASD may define the scope of a duty of a broker dealer. <u>As You Sow</u>, Memo. at 22, particularly

16

since, for purposes of negligence claims, "[p]rofessionals are judged according to the standard of care required by their profession." WATCO v. Pikering Environmental Consultants, Inc., 2007 WL 1610093, *19 (Tenn. Ct. App. 2007).

In this case, Plaintiffs allege that under NASD rules Defendants had a duty to supervise or prevent the security-related activities of Stokes in which they had knowledge, but failed to do so. Plaintiffs also allege that Defendants had a duty to supervise the conduct of Stokes as an agent. They also allege that Defendants' awareness of the need to supervise Stoke should have been heightened given Stokes' history of problems prior to joining Spelman and that even by minimal supervision Defendants would have discovered Stokes was commingling assets and misappropriating assets for his own benefit. Nevertheless, Plaintiffs claim that Defendants were negligent in their supervision of Stokes and that this negligence caused them damage. Such allegations are sufficient to survive Defendants' Motion to Dismiss.

### 4. Fraud claims

Finally, Defendants move to dismiss Plaintiffs' fraud claims.[6] Defendants argue Plaintiffs have failed to plead fraud with sufficient particularity.

Rule 9(b) of the Federal Rules of Civil Procedure requires that for all averments of fraud, the circumstances must be pled with "particularity," while the *mens rea* relative to the fraud may be alleged generally. Fed. R. Civ. P. 9(b). This Rule has been interpreted by the Sixth Circuit as requiring plaintiffs to allege the time, place, and content of the alleged misrepresentation on which

---

[6]In Count Four of the Complaint, Plaintiffs allege common law fraud. In Counts One and Two, Plaintiffs allege fraud in relation to their Tennessee Securities Act claim and their federal securities claim under § 10(b), respectively.

17

they relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.  See, Yuhasz v. Brush Wellman, Inc., 341 F.3d 559, 563 (6th Cir. 2003).

While Rule 9(b) governs general allegations of fraud, claims of fraud related to securities transactions are subject to a "heightened . . . standard for pleading scienter" under the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §§ 78u-4 & 5.  Robert N. Clemens Trust v. Morgan Stanley DW, Inc., 485 F.3d 840, 847 (6th Cir. 2007).  Under the PSLRA, a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).

Defendants argue Plaintiffs' fraud claims are insufficiently pled because the Complaint is bereft of any assertion that Stokes made any misrepresentations or misleading statements. Defendants also argue the fraud claim is deficient because it does not set forth the date of the alleged fraud so that Defendants can address the timeliness of the claim.

In the Complaint, Plaintiffs allege that Stokes was Defendants' agent.  They further allege that in November 2005, Stokes recommended Plaintiffs move their assets to another firm, that in reliance on that recommendation Plaintiffs transferred their assets, that at the time of the recommendation Stokes intended to misappropriate Plaintiffs' assets, and that Stokes did in fact steal Plaintiffs' assets. Plaintiffs point out in their response to Defendants' Motion to Dismiss their ability to further pinpoint the alleged fraud is hampered by the fact that Stokes is in jail and consequently was inaccessible prior to the filing of the Complaint.

The Court rejects Defendants' contention that only "bare-boned conclusory allegations" support Plaintiffs' fraud claims and that the fraud claims lack any description of the misrepresentations allegedly made by Stokes. (Docket Entry No. 16 at 17).  Reading the Complaint

18

in a light favorable to Plaintiffs, Plaintiffs are alleging that when Stokes recommended Plaintiffs liquidate the securities in Plaintiffs' plan and move the plans' assets to another investment firm, he notified the Defendants in writing to liquidate the securities and to forward the assets to a new firm, and had the intent at that time to steal the assets. Such an allegation supports a securities fraud claim. See, SEC v. Zandford, 535 U.S. 813, 820 (2002)(a broker's alleged sale of a client's securities with the undisclosed intent to misappropriate the proceeds constitutes fraud in connection with the purchase or sale of securities under Section 10(b)). These allegations also support a claim for constructive fraud inasmuch as Plaintiffs are asserting Stokes intentionally omitted material facts which would have caused Plaintiffs to act differently had they known Stokes' true intentions. See, Hopper v. Moling, 2005 2077650, *8 (Tenn. Ct. App. 2005) ("the law is clear that omissions can constitute constructive fraud"). Those allegations also support a claim for promissory fraud under Tennessee common law. See, Jones v. State ex rel. Coleman, 2006 WL 3613612 (Tenn. Ct. App. 2006)(promissory fraud involves a misrepresentation regarding a promise of future action without the present intention to carry out the promise).

The Court also rejects Defendants' contention that Plaintiffs' fraud claims are insufficient because they fail to allow Defendants to address the timeliness of the claims. While Plaintiffs state they had a relationship with Stokes from 2001 until 2006, their fraud claims, fairly read, are based upon Stokes allegedly defrauding them by stealing their money between November 2005 and June 2006.

The heightened pleading requirements for both common law fraud and fraud claims under the PSLRA serve the purposes of informing the defendant of the act so as to allow him to prepare an effective response and defense; to eliminate complaints filed as a pretext for discovery of

19

unknown wrongs; and to protect defendants from unfounded charges of wrongdoing which may injure reputations and goodwill. Bouvee v. Coopers & Lybrand C.P.A., 272 F.3d 356 362 (6th Cir. 2001). However, the pleading requirements for fraud may be relaxed where a plaintiff alleges that the fraud allegedly occurred over a period of time, May v. Peninger, 2008 WL 509470 at *7 (D.S.C. 2008), or where a plaintiff is unable to ascertain all of the essential facts prior to filing through no fault of his own. Emery v. American General Finan. Inc., 134 F.3d 1321, 1323 (7th Cir. 1998)(collecting cases). Further, where a fraud claim is based on misrepresentations or omissions, the pleading requirements are satisfied by alleging "the general time period during which the fraudulent conduct occurred[.]" Wheeler v. Bishop, 2008 WL 110452 at *3 (W.D. Va. 2008); Mikels v. Unique Tool & Mfg. Co., 2007 WL 428 4727 at *14 (W.D.N.C. 2007).

In this case, the Court finds Plaintiffs' allegations relating to the time of the alleged fraud sufficient under the circumstances to serve the purposes of the heightened pleading requirements for fraud claims. Plaintiffs state that Stokes allegedly stole the funds during a specified six-month period. See, As You Sow, Memo. at 18 (plaintiffs' allegation that Stokes stole their investment monies between 2002 and 2006 satisfied heightened pleading requirement of Rule 9(b)). Accordingly, the fraud claims will not be dismissed at this time.

## IV. CONCLUSION

On the basis of the foregoing, Defendants' Motion to Dismiss (Docket Entry No. 15) will be denied.

An appropriate Order will be entered.

ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE